**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**UNITED STATES OF AMERICA,**

     *Petitioner*,

**v.**                                                            **Case No. SA-18-CV-0998-JKP**

**89.9270303 BITCOINS, MORE OR LESS,**
**SEIZED FROM TREZOR VIRTUAL**
**CURRENCY WALLET BELONGING TO**
**JAYMES ALLEN CLARK, et al.,**

     *Respondents*.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pursuant to 18 U.S.C. § 981, Petitioner United States of America ("the Government") seeks the civil forfeiture of five specifically listed respondent properties that are alleged proceeds traceable to criminal activity of Jaymes Allen Clark: (1) 89.9270303 Bitcoins, more or less; (2) 30.68393888 Bitcoins, more or less; (3) 76.00 Bitcoin Cash, more or less; (4) 187.5 Ethereum, more or less; and (5) $120,000.00 Bank of America cashier's check, Serial Number 1049711958. Two claimants, Jaymes Clark ("Clark") and Marena Clark-Lazaire, contest the forfeiture and have asserted claims to the respondent properties. *See* ECF Nos. 7 and 8.

Before the Court are *Claimants' Partial Motion for Summary Judgment* (ECF No. 26) to which the Government has responded (ECF No. 30);[1] *Claimants' Motion to Dismiss Based on*

---

[1] In support of their summary judgment motion, Claimants filed an Appendix (ECF No. 26-1) that includes four exhibits: (A) the Amended Verified Complaint for Forfeiture; (B) Petitioner's Response to Claimants' First Set of Requests for Admission ("RFA"); (C) Warrant to Seize Property Subject to Forfeiture (and supporting warrant affidavit); and (D) Restraining Order (Crim. ECF No. 41 (when the Court cites to an ECF No. from the underlying criminal case, Case No. 5:17-CR-0805, it will use Crim. ECF No.)). The Government filed evidence in response: (1) Affidavit in Support of an Application for a Seizure Warrant; (2) Affidavit of United States Secret Service Senior Special Agent Jeffrey R. Francis; (3) Claimants' First Response to RFA; and (4) Deposition of Clark. *See* ECF No. 30-1 through 30-4.

*Suppression of Illegally Searched and Seized Evidence* (ECF No. 27) to which the Government has responded (ECF No. 31);[2] and *United States of America's Motion for Summary Judgment* (ECF No. 29) to which Claimants responded (ECF No. 32) and the United States replied (ECF No. 35).[3] On September 3, 2021, the Court held a hearing on these motions and one other – *Motion to Dismiss Pursuant to Supplemental Rule G(2)* (ECF No. 28). For reasons stated on the record, the Court denied the Rule G(2) motion to dismiss. Both sides have presented evidence in support of their positions. After considering the motions and related briefing, the evidence presented, and the parties' arguments, the Court denies both motions by Claimants and partially grants the Government's motion.

## I. NATURE OF ACTION

This is a civil forfeiture action brought pursuant to 18 U.S.C. § 981 against the respondent properties listed above. Section 981(a)(1)(C) allows the Government to seek forfeiture of "any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [18 U.S.C. § 1029] or a conspiracy to commit such offense." Except for the cashier's check, the respondent properties are various forms of cryptocurrency, stored on three cryptocurrency wallets.[4] The parties refer to these wallets as key fobs. For consistency, the Court adopts this reference and herein, the term "key fob" refers to a cryptocurrency wallet.

---

[2] In support of their suppression motion, Claimants filed an Appendix (ECF No. 27-1) that includes the same four exhibits that support their summary judgment motion in addition to three more exhibits: (E) Motion to Vacate Restraining Order (Crim. ECF No. 53); (F) Government's Response to Motion to Vacate (Crim. ECF No. 54); and (G) Email from an Assistant United States Attorney to Defense Counsel.

[3] To support its summary judgment motion, the Government filed an Appendix of Undisputed Facts (ECF No. 29-1) and ten exhibits (ECF Nos. 29-2 through 29-11). In response, Claimants filed an Appendix (ECF No. 32-1), which purports to include six exhibits: (A) Transcript of April 19, 2018 Status Conference Hearing (Crim. ECF No. 63); (B) Affidavit from Clark; (C) Affidavit from Matthew Baker; (D) a Bitcoin Article; (E) Clark Deposition; and (F) Cryptocurrency Transactions. The response also includes an Exhibit G which includes various matters, including emails between Clark and Baker related to purchases in 2011.

[4] At least one wallet is a Trezor wallet. Trezor is a brand name for one of several types of cryptocurrency wallets sold on the market. These hardware devices are very often the size and shape of a key fob.

## II. FACTUAL BACKGROUND

Upon his arrest in September 2017, the Government charged Clark with violations of 18 U.S.C. § 1029. It alleged that he and two other conspirators participated in a fraud scheme involving Target gift cards beginning in September 2016 and concluding on September 7, 2017. *See* Plea Agreement (ECF No. 29-3); Clark Dep. (ECF No. 29-4) 46:13-16. On October 19, 2017, Clark pled guilty to one count of conspiracy to commit access device fraud. *See* Plea Agreement; Judgment (ECF No. 29-2).

Prior to his indictment, Target employed Clark as an Executive Team Leader of Assets Protection in San Antonio, Texas. *See* Plea Agreement at 3. Clark used his employee credentials to access Target's gift card database to search for recently activated gift cards. *Id*. at 3-6. After identifying the recently activated gift card accounts, Clark took screenshots of the account information, which included the dollar amount and the unique account number for each card. *See* Claimants' First Resp. to RFA (ECF No. 30-3) at 2 (response to RFA 6). Clark sent screenshots containing the gift card account information to his co-conspirator(s). *Id*.; Aff. Supp. App. Seizure Warrant (hereinafter "Warrant Affidavit") (ECF No. 30-1) ¶¶ 9, 14. The co-conspirators used the compromised Target gift cards to purchase "clean" iTunes and Target gift cards. *Id.* ¶¶ 12, 14.

During the conspiracy, Clark communicated with a co-conspirator on WhatsApp. *Id.* ¶ 15. The WhatsApp messages show that the "clean" gift cards were exchanged for cryptocurrency. *Id.* ¶¶ 16-20. Clark admits he received Bitcoin from the conspiracy by sending Bitcoin addresses in response to requests from a co-conspirator. Clark Dep. 16:6-14; 42:17-25; 43:1-13; 44 6-24; 45:3-8. The co-conspirator then sent Bitcoin to Clark via the address he provided. *Id*. 46:17-21.

Clark used cryptocurrency wallets to store his Bitcoin. *Id*. 48:2-49:24. First on a Mycelium[5]

---

[5] Mycelium is a mobile wallet that runs as an application on smartphones, tablets, and other mobile devices.

wallet and later on Trezor wallets. *Id*. 49:21-24; 71:25-72:4. Clark had a Trezor wallet (key fob one) with him when he was arrested. *Id*. 50:13-18.

Following his arrest, Clark was detained at the GEO detention facility in San Antonio, Texas. *Id*. 50:19-22. On September 21, 2017, Clark called his wife from GEO. *Id*. 51:1-11; ECF No. 30-3 (response to RFA 19). At the beginning of each call originating from GEO, a recorded message advises that phone calls are recorded. Clark Dep. 51:7-11; ECF No. 30-3 (response to RFA 26). During the call, Clark asked his wife if she had received a key fob from the Secret Service Agents and told her that she could keep it or send the fob to his friend Matt Baker ("Baker") in Portland. Clark Dep. 51:12-52:14; ECF No. 30-3 (response to RFA 23). Clark then told his wife the passcode to key fob one and said she could tell Baker the passcode too. Clark Dep. 53:11-54:3. Clark's wife then sent the fob to Baker. *Id*. 53:11-54:3; ECF No. 30-3 (response to RFA 25). The recordings of Clark's calls from GEO were turned over to the agents involved in the case. Warrant Affidavit ¶ 21.

On January 29, 2018, Clark was sentenced and ordered to pay $115,760.00 restitution to Target. *See* Judgment. That same day, the Court issued a restraining order directing Clark and his attorneys[6] to identify and provide all physical devices used to store virtual or cryptocurrency private key(s), including anything in writing, and to identify all cryptocurrency accounts held by Clark. *See* Crim. ECF No. 41. The order prohibited Clark and his attorneys from concealing or disposing of Clark's assets including any digital assets. *Id*.

On January 30, 2018, Jeffrey Francis, Senior Special Agent for the United States Secret Service ("SA Francis") contacted Baker and confirmed Baker's receipt of the fob that Clark's wife

---

[6] The order includes Clark and "his representatives, attorneys, agents, family members, nominees, alter egos (companies), custodians, assigns, and any other person or entity holding any property belonging to Defendant or acting at the direction of, for, or in concert with Defendant, hereinafter described as the 'Restrained Parties.'" Crim. ECF No. 41 at 1.

sent to him – key fob one. Warrant Affidavit ¶ 25. On January 31, 2018, Baker delivered the key

fob to a Secret Service office in Portland, Oregon. *Id*. On February 1, 2018, the key fob was stored

in the evidence vault in the Secret Service Field Office in San Antonio, Texas. *Id*. ¶ 26.

On April 13, 2018, Guillermo Lara, the attorney in Clark's criminal case moved to vacate

the restraining order and argued that vacating the restraining order would allow Clark to access his

Bitcoin account to pay the restitution in its entirety. *See* Crim. ECF No. 53. The Court denied the

motion because it had "no confidence at all, zero at the moment, that [Clark] will do what he's

supposed to do." Crim. ECF No. 63 (Tr. of Apr. 19, 2018 Status Conference) 4:3-4. The Court and

Mr. Lara then had the following exchange:

> The Court: However, here is what I'm going to do, I'm going to deny it without
> prejudice. I would suggest that you work with your client on some sort of arrange-
> ment whereby access to that account is provided to a third party, even you might
> be that person and that the money go -- that you get the money out or the [Bitcoin]
> or whatever it is and turn it into real money, U.S. dollars, and then satisfy the obli-
> gation. Because I have no confidence at all that he will do it himself.

> Mr. Lara: Absolutely, Judge, understood. We will make sure that that does happen.

> The Court: Then you can file another motion to the Court and I will consider it at
> that time, okay, but under the circumstances, your motion basically is give it to him
> and let's all trust him. And I don't trust him, so that isn't going to work. Okay.

> Mr. Lara: Just so I'm clear, in terms of the potential agreement would be that I
> would be allowed access to if not the ability to transfer or liquidate some of it to
> actual currency –

> The Court: You're going to have to work out an arrangement with the United States.
> If you can't work out an arrangement[ ] with the United States, then you're going
> to have to come and argue it with me.

> Mr. Lara: Understood.

*Id*. 4:5-5:3.

Following that status conference, the Government "advised Defendant's counsel of the

procedure for accessing the Bitcoin account using the fob in the government's custody. Mr. Lara

was also advised of the potential for civil forfeiture based on evidence indicating Defendant purchased [B]itcoin with the proceeds of his criminal offense." Crim. ECF No. 59 at 1. The Government also attempted to "coordinate a meeting" "with all the interested parties as suggested by the Court"; "had a conference call with an attorney helping Mr. Lara with this matter," in which it "advised the attorney of the potential for forfeiture of funds exceeding the restitution debt"; and on June 7, 2018, "sent an e-mail to all interested parties indicating the need to meet and settle this matter." *Id.* at 1-2.

On June 11, 2018, Mr. Lara delivered a check to the District Clerk's Office for the full amount of the restitution. *See id.* at 2. On July 2, 2018, Mr. Lara filed a motion asking the Court to release Clark from the custody of the U.S. Marshal and transfer him to the Bureau of Prisons ("BOP") for the balance of his sentence. Crim. ECF No. 57. The next week, the Government responded by agreeing that the Court should grant the motion and transfer and designate Clark "to the custody of the Bureau of Prisons to serve the rest of his sentence." Crim. ECF No. 59 at 1.

On July 10, 2018, SA Francis accessed key fob one (the fob provided by Baker) using the passcode obtained from Clark's September 21, 2017 GEO phone call. *See* Warrant Affidavit ¶ 27. SA Francis noted that the fob contained about "89.9 bitcoin." *Id.* at 12. At a status conference the next day regarding the motion for transfer to BOP custody, the Court commented: "I know the Government thinks there's something really fishy going on here, to say the least, because – but there isn't really much I can do about it here. I don't think there's any jurisdiction that I – continuing jurisdiction that I have really." Crim. ECF No. 64 (Tr. of July 11, 2018 Status Conference) 2:18-22. To which the Government responded: "I agree with that, Your Honor. I absolutely agree with that." *Id.* 2:23-24. On July 12, 2018, SA Francis swore out an affidavit to seize the Bitcoin contained in key fob one (the wallet he had opened on July 10). Warrant Affidavit at 1, 12, 13.

On July 16, 2018, SA Francis reviewed transactions associated with key fob one and noted the following:

| Date | Bitcoin Withdrawn | Dollar Value |
|------|-------------------|--------------|
| April 22, 2018 | 56.63692517 | $503,429.76 |
| May 28, 2018 | 15 | $108,933.45 |
| June 11, 2018 | 29.46688511 | $200,081.91 |
| Total | 101.1038103 | $812,445.12 |

Aff. Francis Supp. Resp. to Claimants' Partial Motion for Summ. J. (hereinafter Aff. Francis) (ECF No. 30-2) ¶¶ 3-5.

The Government commenced this civil forfeiture action on September 25, 2018. *See* Verified Compl. for Forfeiture (ECF No. 1). On October 17, 2018, in the criminal case, the Government filed a *Motion for an Order to Show Cause why Attorney, Guillermo Lara, Jr., should not be held in Contempt of Court. See* Crim. ECF No. 65. The table above reflects a clarification set out in Paragraph 9 of this motion, which states the findings of SA Francis while clarifying that the withdrawal of May 28, 2018, was fifteen Bitcoin only. Further, the motion indicates that, while the identity of the person who withdrew the Bitcoin and the manner in which the withdrawals were accomplished have never been determined, the June 11, 2018 withdrawal directly implicates Mr. Lara who delivered the restitution check the same date. *See* Crim. ECF No. 65 ¶ 9.

Clark moved to stay the show cause hearing due to ongoing negotiations between his attorney and the Government. *See* Crim. ECF No. 72. The Court granted that stay on November 1, 2018. *See* Crim. ECF No. 73. On November 8, 2018, the Government received a fob (key fob two) that contained 30.6839888 Bitcoin. Aff. Francis ¶ 6. The other fob (key fob three) containing 76.00 Bitcoin Cash and 187.5 Ethereum was provided to the Government a week later. *Id.* On December 6, 2018, the Government withdrew the motion after Mr. Lara and his attorney turned over key fobs two and three and a cashier's check for $120,000.00. *See* Crim. ECF No. 75; Aff. Francis ¶ 6. SA

7

Francis determined that the digital assets on key fobs two and three and the $120,000.00 cashier's check "derived" from the key fob turned over by Baker on January 31, 2018. Aff. Francis ¶ 8.

The Government filed an Amended Verified Complaint for Forfeiture (ECF No. 3) on March 14, 2019. Claimants filed their notices of claims on April 18, 2019. *See* ECF Nos. 7 and 8. On December 14, 2020, the parties filed the respective motions now before the Court. *See* ECF Nos. 26, 27, and 29. The Court conducted a hearing on the motion earlier this month. With the briefing complete and hearing concluded, the Court is prepared to rule.

### III. MOTION TO SUPPRESS

Despite its title, the Court construes Claimants' motion to dismiss as a motion to suppress the use of the property as evidence pursuant to Supplemental Admiralty and Maritime Claims Rule G(8)(a).[7] Claimants contend the three key fobs, and their contents should be suppressed because they were seized and searched in violation of the Fourth Amendment.

Claimants have the burden of establishing they have a reasonable expectation of privacy regarding Fourth Amendment claims. *Barry v. Freshour*, 905 F. 3d 912, 914 (5th Cir. 2018). "The application of the Fourth Amendment depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979).

### A. Reasonable Expectation of Privacy in Phone Calls Made From GEO

Because pretrial detainees and inmates have no reasonable expectation of privacy in personal calls they make from the institution, Clark did not have a reasonable expectation of privacy in his communication when he phoned his wife from GEO and gave her the passcode to key fob one. *See Evans v. Skolnik*, 997 F.3d 1060, 1068 (9th Cir. 2021) (quoting *United States v. Van*

---

[7] Rule G governs forfeiture actions in rem arising from federal statutes. Supplemental Rule G(8)(a) permits a party who has "standing to contest the lawfulness of the seizure" to "move to suppress use of the property as evidence."

*Poyck*, 77 F.3d 285, 290-91 (9th Cir. 1996) ("no prisoner should reasonably expect privacy in his outbound telephone calls")); *United States v. Gangi*, 57 F. App'x 809, 815 (10th Cir. 2003) (also quoting *Van Poyck*, 77 F.3d at 291 "any expectation of privacy in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered by routine taping of such calls"); *United States v. Madoch*, 149 F. 3d 596, 602 (7th Cir. 1998) (same and marital communications privilege does not apply in such calls); *Sanders v. Bradley*, 47 F.3d 1170 (6th Cir. 1995) (prison inmates have no reasonable expectation of privacy in phone conversations); *McCassey v. Hamilton*, No. A-15-CA-373-RP, 2015 WL 4644907, at *2 (W.D. Tex. Aug. 4, 2015) (recommendation of Mag. J.) (same, pretrial detainee) *adopted by* unpub. Order (Oct. 7, 2015) (ECF No. 9). An outsider likewise has no expectation of privacy when speaking to an inmate or detainee on a phone provided by the detention facility.

Accordingly, the Court denies Claimants' motion in so far as it seeks to suppress statements made during any personal call Clark made from GEO.

## B. Expectation of Privacy in Contents of Key Fobs

In the following exchange with the Court, Claimants' counsel conceded that the Government did not unlawfully seize key fobs one, two, or three:

> The Court: Well, do you at least -- and answer how you wish. But do you concede at least that the Government did not seize any of these. There was no government [taking] of Mr. Clark's property. It was given to them through third parties, whether it's Mr. Baker for the first key fob or Mr. Lara for the last two key fobs and a check?

> Mr. Allen: We would concede that the physical possession was given to the Government whether through the key fob or Mr. Lara. But, again, now the government has seized those assets because, obviously, they have not given those back. So that would be the distinction, not that they went in and stole the check. Obviously, Mr. Lara provided that. So the -- the search of the Trezor wallet and then the subsequent seizure of the assets.

Rough Tr. 32:9-22. [8]

Clark contends SA Francis violated his Fourth Amendment rights when he accessed key fob one using the passcode Clark told his wife during the call Clark made from GEO. Because Claimants concede that key fob one was not illegally seized and because neither Claimant has a reasonable expectation of privacy in Clark's personal calls from GEO, the Court denies the motion in so far as it seeks to suppress the search of key fob one.

Moreover, even if Claimants' counsel did not concede that key fob one was not unlawfully seized, the third-party doctrine applies to key fob one. "A person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743 (1979). The Supreme Court has consistency held "that the Fourth Amendment does not pro-hibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Id*. "As a result, the Government is typically free to obtain such information from the recipient without triggering Fourth Amendment protections." *Carpenter v. United States*, 138 S. Ct. 2206, 2216 (2018). When Clark told his wife that she could keep key fob one or give it to Baker and then gave her the passcode to key fob one during a call made from GEO, he relinquished any legitimate expectation of privacy in the fob and its contents because he voluntarily gave both the fob and its passcode to third parties.

Claimants also contend that any search of keys fobs two and three—turned over by Clark's former criminal defense lawyer, Mr. Lara (or the attorneys who represented Mr. Lara in the show

---

[8]  To aid in its recollection of the hearing, the Court obtained a quick, rough draft of the transcript. Because it is a rough draft only, the Court utilizes the typical spellings for the unusual terminology raised in this cryptocurrency case.

cause matter)[9]—violated the Fourth Amendment. The Court specifically asked counsel for both parties whether Clark objected to the lawyers' actions in giving the fobs to the Government. Counsel for the Government stated they had no indication from Mr. Lara that Clark objected to this action. Claimants' counsel responded to the Court's inquiry thusly:

> The Court: Okay. Let me hear from Mr. Allen on this point about Mr. Lara tendering key fobs containing information from -- related to digital currencies through the Government, and whether that was with the consent of Mr. Clark. If that's true, does it vitiate or negate any claim that the Fourth Amendment [was] implicated.

> Mr. Allen: . . . Mr. Lara, in response to the restraining order, gave over that device as the Court ordered him to do. And so that -- that is one thing that's – we're not in contention about that.

> The next is getting into that device without a warrant. And so I think that's the distinction here in front of the Court today.

Rough Tr. 18:2-7, 18:21-19:2

Because the Court finds that Mr. Lara voluntarily relinquished key fobs two and three to the Government, it concludes that Claimants have no reasonable expectation of privacy in those fobs or their contents.

## C. Conclusion Regarding Motion to Suppress

For the reasons stated, the Court denies the motion to suppress.

## IV. MOTIONS FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material" and facts are "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over material facts qualify as

---

[9]  Mr. Michael C. Gross and Mr. Donald H. Flanary, III represented Mr. Lara on the show cause matter in relation to Clark's federal criminal case. Crim. ECF Nos. 67 and 70.

"genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Given the required existence of a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. A claim lacks a genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When "the movant bears the burden of proof on an issue," the movant "must establish beyond peradventure all of the essential elements of the claim" to warrant judgment as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). And, when considering a motion for summary judgment, courts view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted).

Once the movant has carried its summary judgment burden, the burden shifts to the non-movant to establish a genuine dispute of material fact. With this shifting burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn*, 832 F.3d at 234 (citation omitted). Additionally, the courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

**A. Claimants' Summary Judgment Motion**

Claimants' summary judgment motion is narrowly drawn. It specifically asserts the following basis for summary judgment: "the verified Amended Complaint and the affidavit supporting the seizure warrants fall well short of sustaining the [G]overnment's burden to establish probable cause for its seizure of the Claimants' Bitcoin Cash, Ethereum, and Cashier's Check." ECF No. 26 ¶ 12. They contend they are entitled to summary judgment because no probable cause exists to support the Government's seizure of Claimants' Bitcoin Cash, Ethereum, and Cashier's Check. *Id.* ¶ 11. The motion thus concerns only the cashier's check and key fob three, which contained the Ethereum and Bitcoin Cash.

As discussed more fully in the next section, the Government's civil forfeiture claims are brought under 18 U.S.C. § 981(a)(1)(C). This statute lists predicate criminal offenses that justify civil forfeiture if it can be proven by a preponderance of the evidence that the property sought in forfeiture derived from proceeds traceable to a violation of such an offense. *See* 18 U.S.C. § 983(c)(1).

Further, as discussed with respect to Claimants' motion to suppress, there is no basis to suppress the cashier's check or evidence from key fob three. These items were turned over to a third party and there is no reason to revisit the matter in the context of Claimants' partial motion for summary judgment. Thus, even though the Government sought an arrest (seizure) warrant for the respondent properties (ECF No. 3), key fob three and the cashier's check were already legally in the Government's possession. The request for a warrant was merely pro forma. By obtaining a warrant for the respondent properties, the Government was permitted to maintain custody and control over the properties during the civil forfeiture proceedings.

Having concluded that Claimants' probable cause argument provides no valid basis for

their summary judgment motion, the Court denies the motion. Furthermore, to the extent Claim-ants contend that there is an absence of facts to show that the Ethereum, Bitcoin Cash, and Cash-ier's Check were proceeds or derived from criminal activity, the Government's response creates at least a genuine dispute of material fact regarding whether key fob three and the cashier's check are subject to forfeiture.

## B. Government's Summary Judgment Motion

The Government moves for summary judgment seeking forfeiture of the respondent prop-erties. It argues that it has established by a preponderance of the evidence that the respondent properties are forfeitable to the United States under 18 U.S.C. § 981(a)(1)(C), because the proper-ties constitute or are derived from proceeds of violations or a conspiracy to commit violations of 18 U.S.C. § 1029. ECF No. 29 at 6-10. It further argues that once the burden shifts to the Claimants to prove, by a preponderance of the evidence, that the respondent properties are not subject to forfeiture, Claimants fail to carry that burden.

Section 981(a)(1)(C) provides that "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting specified unlawful activity (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense" is subject to forfeiture to the United States. "The burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1); *United States v. $157,808.97, More or Less, in Currency*, 309 F. App'x 851, 853 (5th Cir. 2009) (per curiam). Circumstantial evidence is a permissible form of proof in civil forfeiture actions. *United State v.3148 Woodlawn Drive, Groves, Tex.*, No. 1:10-CV-375, 2012 WL 966117, at *1 (E.D. Tex. Mar. 1, 2012) (recommendation of Mag. J.), *adopted by* 2012 WL 966061 (E.D. Tex. Mar. 21, 2012).

14

Once the Government satisfies its burden, the claimant has the burden of establishing that the respondent property is not subject to forfeiture. Claimants may proceed under various theories to meet their burden to establish that a respondent property is from a legitimate source (i.e., not proceeds from a crime) or that they are innocent owners. *See* 18 U.S.C. § 983(d); *United States v. $79,010.00 in U.S. Currency*, No. CV-10-0244-PHX-DGC, 2012 WL 1150849, at *1 (D. Ariz. Apr. 5, 2012), *aff'd*, 550 F. App'x 462 (9th Cir. 2013).

### 1. Government's Burden as to 147.18 Bitcoin

There is no genuine dispute of material fact that 147.18 Bitcoin constitutes proceeds or are derived from proceeds traceable to the conspiracy to commit access device fraud to which Clark pleaded guilty. Clark testified that he was paid in cryptocurrency, specifically, Bitcoin. Clark's WhatsApp communications with one of his co-conspirators (Brown) establish a clear pattern between Clark and Brown in which Brown requested Bitcoin addresses from Clark, Clark provided Bitcoin addresses to Brown, and Brown sent Bitcoin to Clark.

It is undisputed that the conspiracy to which Clark pled guilty began in September 2016 and concluded September 7, 2017. Clark testified that he did not own a Trezor wallet (key fob) prior to April 2017 but had owned another brand of cryptocurrency wallet. The evidence shows that on April 7, 2017, key fob one had a zero balance and the next day it contained 100 Bitcoin. Clark also testified that the digital currency listed in the style of the case was stored on his Trezor wallet. And he testified that he owned over 200 Bitcoin at the time of his arrest. Clark Dep. 40:11. In an October 19, 2016 WhatsApp communication with Brown, Clark stated, "I'm really excited we're going to make a nice fat bitcoin wallet," and "we found an amazing scheme." On October 31, 2016, Clark stated "we're going to work our asses off but man we will mint some btc." Nothing of record indicates any dispute that btc is shorthand for Bitcoin.

SA Francis testified that he calculated the Bitcoin Clark received from the conspiracy using the Bitcoin addresses Clark sent to Brown and the Bitcoin Brown sent to Clark based on their WhatsApp communications. Clark testified he would use a similar method to determine the amount of Bitcoin he received from the conspiracy. Clark Dep. 63:5-23. At the September 3, 2021 hearing, SA Francis testified that he determined Clark received 147.18 Bitcoin from the conspiracy. Rough Tr. 66:19-22; 68:5-70:13. Clark's attorney, without any supporting evidence, stated Clark received only 69.05 Bitcoin from the conspiracy. *Id.* 58:4-9.

Upon the evidence presented, the Court finds the Government has met its burden, by the presentation of circumstantial evidence, that 147.18 Bitcoin constitutes proceeds traceable to Clark's conspiracy. Clark's deposition testimony, the factual predicate in his plea agreement, the WhatsApp messages, and SA Francis's analysis of the transactions associated with the WhatsApp messages provide a substantial connection between 147.18 Bitcoin owned by Clark and his offense of conviction.

### 2. Claimants' Burden and Innocent Owner Defense as to 147.18 Bitcoin

As the government has met its burden, the burden shifts to Claimants to identify a genuine dispute of material fact regarding the Government's claim or provide sufficient evidence to show, by a preponderance of the evidence, that the seized Bitcoin was not connected with illegal activity.

The innocent owner defense is an affirmative defense in civil forfeiture actions. *See* 18 U.S.C. § 983(d); *United States v. $ 399,101.96 More or Less, in U.S. Currency*, No. SA-11-CV-731-XR, 2013 WL 3994632, at *5 (W.D. Tex. Aug. 1, 2013). Unless specifically pled, an affirmative defense is waived. *See Woodfield v. Bowman*, 193 F. 3d 354, 362 (5th Cir. 1999); *Trinity Carton Co. v. Falstaff Brewing Corp.*, 767 F.2d 184, 193-194 (5th Cir. 1985). Claimants pled in

their amended answer: "Respondent acted in good faith at all times relevant to the Complaint." *See* Am. Answer (ECF No. 11) at 9. Because this does not equate to pleading the innocent owner defense, Claimants have not properly asserted such defense pursuant to Fed. R. Civ. P. 8(c).

Assuming Claimants pled the innocent owner affirmative defense, the parties agreed at the September 3, 2021 hearing that the Court's consideration of the defense should be limited to 18 U.S.C. § 983(d)(2)(A)(i)-(ii). Under these subsections, an "innocent owner" is one who "did not know of the conduct giving rise to forfeiture," or "upon learning of the conduct giving rise to forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A)(i)-(ii). The burden of proof on an innocent owner defense is by a preponderance of the evidence. *Id*.

Based on the evidence in the record, testimony at the hearing, and the parties' arguments, Claimants have not met their burden. Clark testified that he mined and owned Bitcoin prior to the conspiracy but Claimants did not present any evidence that the Bitcoin Clark owned prior to the conspiracy is now stored on the key fobs in the Government's possession. Claimants assert that only 69.05 Bitcoin is connected to the conspiracy. Rough Tr. 58:4-9 But the Government presented evidence that 147.18 Bitcoin is connected to the conspiracy. *Id.* 68:5-70:13. In the absence of any evidence to rebut SA Francis's testimony that 147.18 Bitcoin was delivered to Clark based on the WhatsApp messages, the Court concludes Claimants failed to meet their burden to establish innocent ownership by a preponderance of the evidence. *See, e.g., United States v. $79,010.00 in U.S. Currency*, No. CV-10-0244-PHX-DGC, 2012 WL 1150849, at *8-9 (D. Ariz. Apr. 5, 2012) (where the claimant asserted that the defendant property was part of a legitimate business, the court noted the absence of "evidence in the form of sales invoices, order forms, or even corroborating testimony to show that he ever had a mobile t-shirt printing business" made the

legitimate business assertion implausible), *aff'd*, 550 F. App'x 462 (9th Cir. 2013).

### 3. Other Respondent Properties

The Government contends the contents of key fob three (187.5 Ethereum and 76.00 Bitcoin Cash) and the $120,000.00 cashier's check are subject to forfeiture. Despite SA Francis' statement that the contents of key fob three and the cashier's check "derived from" the "seized Trezor Virtual Currency Wallet belonging to Clark," the Court views such statement as a conclusion rather than a statement of fact. Even if SA Francis is presented as an expert, "conclusory assertions cannot be used in an affidavit on summary judgment." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). Instead, summary judgment affidavits "must set forth facts 'as would be admissible in evidence.'" *Id*. (quoting Fed. R. Civ. P. 56(e) (now found in Rule 56(c)(4) which requires affidavits to "set out facts that would be admissible in evidence"). Of course, at trial, "the mere fact that an expert's conclusion trenches upon a jury issue does not compel its exclusion." *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977). At this point, the Court is not excluding the conclusion, but rather it views it as not proper summary judgment evidence.

And, viewing the evidence in the light most favorable to Claimants, the presented evidence of record does not conclusively establish the statement. From the evidence, it is clear that approximately 101 Bitcoin was withdrawn from key fob one between April and June 2018. This suspicious activity led to a show cause/contempt proceeding against Clark's criminal defense attorney and following further investigation and negotiation between the parties, that lawyer (or the lawyers representing him) gave key fob three and the cashier's check to the Government on November 15, 2018.

SA Francis knew of the suspicious activity and the resulting transfer of fob three and the cashier's check to the Government. Rough Tr. 44-11-20, 45:16-46:4. It was his "understanding .

. . that Mr. Lara had somehow gained access to that account." *Id*. 44:24-25. And he was told "that Mr. Lara had attempted to liquidate some of that" account. *Id*. 45:1-2. He testified that Mr. Lara "attempted to cash out, essentially take some of the cryptocurrency and get fungible currency." *Id*. 45:2-3. Thus, "rather than convert that back to cryptocurrency, they just provided us a check" – the cashier's check turned over to the Government on or about November 15, 2018. *Id*. 45:6-7, 45:16-17. When he picked up that check, he also picked up key fob three. *See id*. 45:24-46:2.

SA Francis connected the cashier's check and the contents of key fob three to Clark's criminal conspiracy because the property "came from Mr. Lara's attorney who Mr. Lara admitted that he had accessed the Trezor account." *Id*. 46:9-12. Even though SA Francis made that connection, he did not know what assets were sold to get that cashier's check – "It could have been bitcoin, it could have been Ethereum, it could have been anything. I don't know. Mr. Lara would have that information." *Id*. 46:14-18. And, although he expressed certainty that Mr. Lara would know why key fob three contained Bitcoin Cash and Ethereum, he did not know what Mr. Lara's reasoning was for choosing Ethereum, but it might have been the going exchange rate at that time. *Id*. 47:13-23.

When asked whether there was anything to suggest that the Ethereum or Bitcoin Cash came from a Bitcoin transaction, SA Francis responded: "It was bitcoin that was transferred. I mean, the transfer is going out. Those were bitcoin addresses." *Id*. 47:24-25, 48:5-6. Although SA Francis did not have "documentation to show that the Ethereum and Bitcoin Cash originated as bitcoin," he was confident that "Mr. Lara would have" that. *Id*. 48:7-10. SA Francis also denied "not knowing" that the Ethereum and Bitcoin Cash originated as Bitcoin. *Id*. 48:7-12. Although he made that denial, he did admit: "I don't know how Mr. Lara converted, why he converted bitcoin to Bitcoin Cash or Ethereum. That would be something Mr. Lara would have." *Id*. 48:12-

14. He further elaborated: "Outgoing transactions from the Trezor account were all bitcoin. All of the transactions going outgoing that were suspect that I thought were anomalous during the period of restraining order, those were all bitcoin addresses. But why Mr. Lara converted it to Bitcoin Cash into Ethereum I don't know." *Id*. 48:16-21.

Despite the confidence SA Francis felt about his determination regarding Mr. Lara, he ultimately admitted, "I don't know," when asked, "Do you know that he did convert it?" *Id*. 48:22-23. He conceded that, based on "how we received it," it could "only be assumed" that Mr. Lara converted it. *Id*. 48:25, 49:3-4. SA Francis flatly denied that the "Ethereum could have been there for years." *Id*. 49:5-7. He based that outright denial on "It was provided by Mr. Lara on a key fob. It's Mr. Lara's word. I mean, that's what he provided the key fobs for." *Id*. 49:7-9.

For purposes of summary judgment, the testimony of SA Francis at the Court's hearing is not enough to carry the Government's burden. While it could be argued that SA Francis made a reasonable assumption that the cashier's check and contents of fob three are traceable to the Bitcoin withdrawn from key fob one, his testimony leaves too much uncertainty and too many unknown facts. The remainder of the evidentiary record does not fill in the missing gaps.

At the September 3, 2021 hearing, an attorney for the Government argued at length about what transpired during the negotiations regarding the contempt proceedings. It was even stated: "And we reached an agreement that instead of pursuing the contempt motion, we would instead accept back what Mr. Lara had withdrawn from the Trezor wallet." Rough Tr. 15:22-24. But argument of counsel is not evidence. Had the Government presented such statement in admissible evidentiary form, such evidence would strongly favor finding that the Government had carried its burden to connect those respondent properties as derived from Clark's criminal activities. But that is not evidence currently before the Court.

The highly suspicious withdrawals and account activity related to key fob one (the key fob that Baker gave to the Government on January 31, 2018) and the Government's theory that digital assets from key fob one made their way onto the other key fobs is unsupported by evidence. The Court has meticulously reviewed the record and conducted a hearing which allowed for the presentation of additional evidence under Fed. R. Civ. P. 56(e). The Government presented evidence that the properties listed in the style of the case were stored on Clark's Trezor wallets (the key fobs). Clark Dep. 71:25-72:1-4. The storage location of 187.5 Ethereum and 76.00 Bitcoin Cash on key fob three, standing alone, does not prove that these items constitute proceeds or are derived from proceeds traceable to Clark's conspiracy. Neither the testimony from SA Francis nor any other evidence makes the requisite connection. A fact issue exists regarding whether the Ethereum, Bitcoin Cash, and cashier's check constitute proceeds or are derived from proceeds traceable to the conspiracy. Therefore, summary judgment regarding these properties is denied.

### 4. Eighth Amendment/Proportionality Claim

Claimants, in their response to the Government's motion for summary judgment, contend that judgment in favor of the Government would result in an excessive fine in violation of the Eighth Amendment under 18 U.S.C. § 983(g). Section 983(g) allows a claimant to "petition the court to determine whether the forfeiture was constitutionally excessive." Claims under the Excessive Fines Clause are not ripe until a final forfeiture order or judgment has been entered. *Schanzle v. Haberman*, 831 F. App'x 103, 108 (5th Cir. 2020) (per curiam). Because Claimants' Eighth Amendment/proportionality claim is not ripe, the Court dismisses the claim without prejudice. *See Urban Developer LLC v. City of Jackson,* 468 F.3d 281, 292 (5th Cir. 2006).

### V. CONCLUSION

For the foregoing reasons, the Court **DENIES** *Claimants' Partial Motion for Summary*

*Judgment* (ECF No. 26); **DENIES** *Claimants' Motion to Dismiss Based on Suppression of Illegally Searched and Seized Evidence* (ECF No. 27), which has been construed as a motion to suppress; and **GRANTS IN PART AND DENIES IN PART** *United States of America's Motion for Summary Judgment* (ECF No. 29). The Court grants the latter motion as it relates to the forfeiture of the Bitcoin respondent properties, but otherwise denies the motion. Furthermore, as noted herein, the Court previously **DENIED** the *Motion to Dismiss Pursuant to Supplemental Rule G(2)* (ECF No. 28) for reasons stated on the record at the September 3, 2021 hearing in this case.

 **IT IS SO ORDERED this 22nd day of September 2021.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**